*Decision will be entered under Rule 50.*

ERNEST GRANUCCI AND BERNICE GRANUCCI, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 107011. Promulgated September 10, 1942.

*Tobias J. Bricca, Esq.*, for the petitioners.
*Harry R. Horrow, Esq.*, for the respondent.

664

OPINION.

ARNOLD: The respondent determined that the amounts of $3,500 and $2,650 claimed as deductions by petitioner in his returns for 1938 and 1939, respectively, were personal expenses and paid out by petitioner for the support and maintenance of his mother. He disallowed the deductions claimed, but allowed in each year a credit of $400 for one dependent under section 25 (b) (2) of the Revenue Act of 1938.

The petitioner contends that during the taxable years his mother was a silent partner of the Belli Motor Co. and that he held her partnership interest in trust; that he held 157 shares in the corporation, of which he was the owner of 90.5 shares (½ of 133 shares plus 24 shares) and his mother was the owner of 66.5 shares (½ of 133 shares) held in trust by him for her, and upon transfer of the corporate assets to the partnership he acquired an interest of 90.5/157 of 11/32 in the partnership and held 66.5/157 of 11/32 interest in the partnership in trust for his mother; that petitioner is taxable only on 90.5/157 of his distributive partnership share, or $5,218.13 for the year 1938 and $4,387.62 for the year 1939, the mother being entitled therefore to $3,834.31 in 1938 and $3,224.05 in 1939 of the partnership income.

The petitioner paid his mother out of his personal checking account $3,797.56 in 1938 and $2,681.42 in 1939. He deducted on his income tax returns for 1938 and 1939 as payments made to his mother the amounts of $3,500 and $2,650, respectively. Whether or not he is entitled to the deductions claimed depends upon whether he became the owner of the 133 shares of stock of M. Belli & Co., Ltd., under the agreement entered into by petitioner and his mother on May 1, 1936. If he owned such shares he was also the owner of the 11/32 interest in the partnership created July 1, 1937, to take over the assets and business of the corporation, which interest the petitioner received as the holder of 157 shares of stock of the corporation, 24 shares of which he purchased on or about April 13, 1937, and 133 shares of which were transferred to him on April 19, 1934. The petitioner concedes that he became the owner of one-half of the 133 shares, or 66.5 shares, under the agreement with his mother, but claims that he held the other half of the stock as trustee for her benefit.

As shown by the partnership agreement the partnership consisted of three partners, Altieri, Soldavini, and the petitioner. Neither in the distribution of partnership earnings nor in the partnership agreement was the mother of petitioner recognized as a partner. Whatever funds she received she received from the petitioner out of his personal funds in the performance of his obligations under the agreement with his mother or as voluntary contributions. Although he now claims

that his mother was entitled to $3,834.31 in 1938 and $3,224.05 in 1939 of the partnership profits, he paid her only $3,797.56 in 1938 and $2,681.42 in 1939. She signed the partnership agreement not as a partner, but merely to indicate her consent to the transfer of the business from the corporation to the partnership. She was interested because 133 shares had been pledged to her by petitioner for the performance by him of his obligations under the agreement with her. The agreement specifically states that the mother did not sign as a party to the agreement. The partnership agreement recognizes the existence of the agreement between the petitioner and his mother, but expressly provides that the partners Altieri and Soldavini do not thereby guarantee the performance of such agreement. They agree only that, in the event of any default on the part of the petitioner in the performance of his obligations under such agreement, his mother shall have the same rights against the interest of the petitioner in partnership property as she had in the stock of the corporation legally owned by the petitioner.

To determine what rights the mother had in the stock we must look to the agreement of May 1, 1936, entered into by petitioner and his mother. In that agreement the mother transferred all her interest in the 133 shares of stock to the petitioner, retaining only a right of lien as security for the performance of the obligations assumed by the petitioner therein. The agreement provides that the mother "transfers, assigns, sets over and conveys to" the petitioner "all her right, title, interest and equity" in the 133 shares of stock, and she "agrees that the same shall be fully, completely and absolutely the property" of the petitioner. No language of transfer could be more specific. Though the absolute ownership of petitioner was subject to certain terms and conditions, it was complete and absolute nevertheless so long as he performed and abided by such terms and conditions.

The petitioner on brief states that pursuant to the contract he became absolute owner of 66.5 shares upon his marriage in September 1936, that upon the happening of that condition his "conditional contingent interest in the contract which petitioner had with his mother, ripened into a vested interest * * *." This conclusion is based upon the provision in the agreement requiring the petitioner to keep in force a will during the life of the agreement providing that his mother should receive all the stock if he died unmarried and without legitimate children or one-half thereof "if he shall leave him surviving either a widow or legitimate issue." In our opinion the requirement that petitioner keep a will in force disposing of the 133 shares of stock indicates that a transfer to the petitioner of all the

stock was intended. Furthermore, we can not agree that the above provision makes the marriage of petitioner a condition upon the happening of which title to one-half of the shares would vest in him. If such provision were determinative of title, then the mother retained title to all the stock until the death of petitioner, for it could not be determined until then whether or not he would be survived by either a widow or legitimate issue. There is no provision in the contract which may be construed as vesting title in petitioner to only one-half of the stock upon his marriage. He either acquired all of the stock or none of it under the agreement.

The agreement apparently had two purposes: (1) To provide support and maintenance for the mother during her life, and (2) the acquisition of the 133 shares of stock by petitioner. That the petitioner wanted to acquire the stock and that it was intended that he should acquire it, appears from the transfer to him in 1934 of the 133 shares by his grandmother and his testimony that such transfer was made for the reason that he wanted to enter into an agreement with his mother so that in case anything happened to her he would be protected in the business and the business would go to him instead of his brothers and sister. The petitioner had supported his mother for nearly six years prior to the agreement by giving her the greater part of his salary. Under the agreement he was required to pay to his mother a substantial portion of his salary and in addition one-half of dividends, if any, paid on the stock. It was stated in the agreement, however, that under the conditions then prevailing the payment of dividends could not be expected for an indefinite period. Therefore the petitioner's earnings derived from his personal services were intended to be the source of her support rather than the stock. If he died she would be left without means of support unless some provision was made for that eventuality. The requirement in the agreement that petitioner keep in force a will during the life of the agreement was intended as a provision for the support and maintenance of the mother in the event the petitioner predeceased her. If the petitioner died before his mother he would be unable to provide her support and maintenance out of his salary or earnings during her life and hence in effect a default would occur in his promise to pay her a certain amount a month out of his salary during her life. If the mother had not intended to transfer the stock to petitioner there would have been no necessity to provide for and to keep in force a will of petitioner under which all or a part of the stock would be reacquired by her in the event he died before she did. The agreement is rather long and in considerable detail, from which it would appear that if it had been intended to transfer the stock to petitioner as trustee for the benefit of the mother, provision would

undoubtedly have been made for the appointment of another trustee in the event of petitioner's death rather than to have the stock go to the mother through the estate of petitioner  Furthermore, if the stock had been transferred to petitioner as trustee the mother would have been entitled only to the dividends paid upon the stock. · In·the agreement the petitioner pledged the stock to his mother for the complete performance of his obligations thereunder.  This also indicates a transfer of the stock to the petitioner.

In our opinion the petitioner held the 133 shares of stock and the partnership interest as owner thereof and not as trustee for his mother. The right of the mother to any of the corporation or partnership income was derived from the agreement she entered into with petitioner on May 1, 1936, and not as owner of the stock, or any part thereof, or as beneficiary of a trust.  Although it may be said that, by virtue of her lien upon the stock and partnership interest the mother had an .equitable interest therein, nevertheless, under the circumstances herein, petitioner's entire distributive share of the partnership earnings or profits for the years involved is taxable to him.  *Burnet* v. *Leininger*, 285 U. S. 136.  Cf. *Rose* v. *Commissioner*, 65 Fed. (2d) 616.

The payments made by petitioner under the agreement with his mother were in part payment for the stock and in part for the support and maintenance of his mother.  There is not sufficient evidence from which we can determine the amount petitioner was required to pay under the contract to his mother.  The contract provides that 85 percent of the amounts agreed to be paid by the petitioner were to be in discharge of petitioner's legal and filial duty to care for and support his mother.  Any amounts paid by petitioner to his mother in excess of the amount required to be paid under the contract were voluntary contributions to the support and maintenance of his mother or gifts. Such payments are not deductible.  In *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435, it is stated that "a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms."

· It was agreed between counsel that the two adjustments made by respondent were mutually dependent, i. e., in the event that respondent erred in disallowing the deductions of the amounts paid his mother claimed by petitioner in his 1938 and 1939 returns, then he likewise erred in allowing the credit for one dependent, and in the event he did not err in disallowing the deductions claimed, then petitioner is entitled to the credit.  Since we conclude that the respondent did not err in disallowing the deductions claimed, the petitioner is entitled to the credit for one dependent in each taxable year as determined by the respondent.

*Decision will be entered for the respondent.*